IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MELVIN GIVENS,

        Plaintiff,

v.                   //   CIVIL ACTION NO. 1:15CV111
                               (Judge Keeley)

C. WILLIAMS; C. EICHENLAUB;
ELLEN MACE-LEIBSON; JAMES
NOLTE; and JOSHUA HALL,

        Defendants.

**ORDER ADOPTING IN PART AND REJECTING IN PART
REPORT AND RECOMMENDATION [DKT. NO. 51] AND GRANTING
IN PART AND DENYING IN PART MOTION TO DISMISS [DKT. NO. 35]**

On July 2, 2015, the plaintiff, Melvin Givens ("Givens"), filed this Bivens[1] action against the defendants, Warden Charles Williams ("Warden Williams"), C. Eichenlaub ("Director Eichenlaub"), Ellen Mace-Leibson, M.D. ("Dr. Mace-Leibson"), James Nolte, Nurse Practitioner ("NP Nolte"), and Joshua Hall, RN ("RN Hall") (Dkt. No. 1). His complaint alleges that the defendants exhibited deliberate indifference to his medical needs by exposing him to tuberculosis ("TB") and prolonging treatment for his "eye condition." Id. at 7-9.

Pursuant to 28 U.S.C. § 636 and LR PL P 2, the Court referred the case to the Honorable Michael J. Aloi, United States Magistrate Judge, for initial review. On June 7, 2016, the defendants filed a

---

[1] In Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court permitted suit against federal employees in their individual capacity, creating a counterpart to suit under 42 U.S.C. § 1983.

**ORDER ADOPTING IN PART AND REJECTING IN PART
REPORT AND RECOMMENDATION [DKT. NO. 51] AND GRANTING
IN PART AND DENYING IN PART MOTION TO DISMISS [DKT. NO. 35]**

motion to dismiss or, in the alternative, for summary judgment (Dkt. No. 35). After full briefing, Magistrate Judge Aloi entered a Report and Recommendation ("R&R") recommending that the Court grant in part and deny in part the motion (Dkt. No. 51).

In support of their motion, the defendants attached declarations, administrative grievances, and medical records (Dkt. No. 36). Fed. R. Civ. P. 12(d) provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

The Court thus has discretion to consider extra-pleading material if it wishes to treat a Rule 12(b)(6) motion as one for summary judgment. McBurney v. Cuccinelli, 616 F.3d 393, 410 (4th Cir. 2010) (Gregory, J., concurring) (citing 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1371 (3d ed. 2010)).

In this case, the defendants have only submitted medical records through November 30, 2010, despite the fact that Givens's complaint and administrative grievances clearly implicate actions occurring through 2013 (Dkt. Nos. 36-3 at 43; 36-1 at 19). Therefore, based on such an incomplete record, the Court will not convert the defendants' motion to dismiss to one for summary

**ORDER ADOPTING IN PART AND REJECTING IN PART**
**REPORT AND RECOMMENDATION [DKT. NO. 51] AND GRANTING**
**IN PART AND DENYING IN PART MOTION TO DISMISS [DKT. NO. 35]**

judgment. Further, following a careful review, the Court **GRANTS in part** and **DENIES in part** the defendants' motion to dismiss (Dkt. No. 36).

## I. BACKGROUND

### A.    Factual Background

The Court takes its recitation of the facts from Givens's complaint and administrative grievances, and construes those facts in the light most favorable to Givens. See De'Lonta v. Johnson, 708 F.3d 520, 524 (4th Cir. 2013).[2]

Givens transferred to Federal Correctional Institution, Gilmer ("FCI Gilmer") from United States Penitentiary Big Sandy in February 2009 (Dkt. No. 1 at 7-8). Since he was transferring from

---

[2] Prior to bringing a Bivens action challenging conditions of confinement, an inmate must exhaust his available administrative remedies. 42 U.S.C. § 1997e(a); Hill v. Haynes, 380 F. App'x 268, 269 (4th Cir. 2010) (unpublished decision). Moreover, the statute of limitations is tolled during pursuit of the "mandatory exhaustion process." See Young v. Thompson, No. 2:10cv66, 2011 WL 3297493, at *4 (N.D.W. Va. July 29, 2011). Unfortunately, Givens did not attach his administrative grievances to the complaint as required by the court-approved Bivens form. Even after being directed to file his grievances (Dkt. No. 8), Givens filed only parts of grievances relevant to his claims (Dkt. No. 10). The defendants, however, attached a complete set of grievances to their motion to dismiss, and the Court is entitled to consider them without converting the motion to one for summary judgment because "they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

**ORDER ADOPTING IN PART AND REJECTING IN PART**
**REPORT AND RECOMMENDATION [DKT. NO. 51] AND GRANTING**
**IN PART AND DENYING IN PART MOTION TO DISMISS [DKT. NO. 35]**

another Bureau of Prisons ("BOP") facility, medical staff at FCI Gilmer did not screen him for tuberculosis ("TB") immediately upon his arrival. On May 28, 2009, after complaining of light-headedness, Givens was diagnosed with hypertension (Dkt. No. 36-1 at 23). Then, seven months after arriving at FCI Gilmer, in September 2009, Givens tested positive for TB exposure via a purified protein derivative ("PPD") test (Dkt. No. 1 at 9). Prior to arriving at FCI Gilmer, Givens had never before tested positive for TB, and alleges that another inmate at FCI Gilmer had to have exposed him to the disease (Dkt. No. 36-1 at 13, 20).

As a result of the positive PPD test, FCI Gilmer placed Givens in a special housing unit ("SHU") isolation cell in December 2009 and "prescribed 'Rifampin' to counter the [TB]." FCI Gilmer removed Givens from isolation on January 9, 2010, but he continued taking medication to treat his TB until April 10, 2010. Id. at 20.

While taking Rifampin in early 2010, Givens expressed concern to Eddie Anderson, DO, an optometrist at FCI Gilmer, that the medication was causing "adverse eye problems." Dr. Anderson nevertheless instructed Givens to continue taking the medication. Id. Thereafter, Givens visited the West Virginia University ("WVU") Eye Institute in Morgantown, West Virginia, where he was examined

ORDER ADOPTING IN PART AND REJECTING IN PART
REPORT AND RECOMMENDATION [DKT. NO. 51] AND GRANTING
IN PART AND DENYING IN PART MOTION TO DISMISS [DKT. NO. 35]

by ophthalmology consultants on April 7 and August 23, 2010. Id. at 12. During this same time frame, an unnamed doctor recommended eye surgery to Givens; Givens's grievances do not make clear whether this surgery was recommended by ophthalmologists at WVU or other doctors. In September 2010, the BOP approved Givens for eye surgery. In August 2011, however, Givens discovered that he was no longer scheduled for surgery, despite the fact that he "needed the surgery right away," and his "eyesight [was] getting progressively worse." Id. at 12-13.

Thereafter, on October 31 and November 21, 2011, an unnamed optometrist and unnamed mid-level practitioner at FCI Gilmer evaluated Givens and requested an ophthalmology consultation. Id. at 14. Givens was seen by an ophthalmologist at WVU on January 18, 2012, and underwent a retinal attachment on his right eye on February 27, 2012. He then received post-operative evaluations on March 7 and May 2, 2012. Id. at 16, 19. Following another evaluation at WVU, Givens underwent further unspecified eye surgery there on November 17, 2013, and was seen for a post-operative visit on December 9, 2013. Id. at 26.

ORDER ADOPTING IN PART AND REJECTING IN PART
REPORT AND RECOMMENDATION [DKT. NO. 51] AND GRANTING
IN PART AND DENYING IN PART MOTION TO DISMISS [DKT. NO. 35]

## B.   Procedural Background

Givens's complaint asserts five claims. In his first and second claims, Givens alleges that, when he arrived at FCI Gilmer on February 27, 2009, he should have been screened for TB immediately, rather than seven months later when staff discovered he had been exposed to the disease (Dkt. No. 1 at 8-9).[3] Givens attributes this failure to test to Warden Williams and Dr. Mace-Leibson, the Clinical Director at FCI Gilmer. In his third and fourth claims, Givens alleges that Dr. Anderson and RN Hall, both members of the medical staff at FCI Gilmer, wrongfully "prolonged his treatment," "which caused him to suffer a detached retina, resulting in permanent vision loss." Id. at 8. Finally, in his fifth claim, Givens alleges that Director Eichenlaub knew his rights were being violated, but still denied his administrative grievances when he appealed to the BOP Mid-Atlantic Regional

_____

[3] Givens later clarified that the defendants' failure to screen him upon intake is not the gravamen of his complaint. Rather, his intent was "to point out . . . that at that time Health Services here at Gilmer were in the practice of not initially screening inmates for infectious or communicable diseases, and that this failure to separate prisoner's [sic] with contagious diseases from others was a 'proximate cause' of his sustained injury" (Dkt. No. 45 at 9). It thus appears that Givens takes issue with FCI Gilmer's failure to diagnose the inmate who exposed him to TB. Id. at 10.

**ORDER ADOPTING IN PART AND REJECTING IN PART
REPORT AND RECOMMENDATION [DKT. NO. 51] AND GRANTING
IN PART AND DENYING IN PART MOTION TO DISMISS [DKT. NO. 35]**

Office, thus depriving him of due process. Givens seeks $2,000,000 in damages from each defendant. Id. at 9.

The defendants' motion to dismiss Givens's complaint (Dkt. No. 35) argues that Givens's claims, which reach back to 2009, are barred by the statute of limitations, and also fail to state a claim for deliberate indifference against any of them (Dkt. No. 36 at 10-18, 21-22). In addition, the defendants contend that NP Nolte is entitled to absolute immunity pursuant to 42 U.S.C. § 233(a), as he is an officer of the Public Health Service. Id. at 24-25.

On January 24, 2017, Magistrate Judge Aloi filed an R&R recommending that the defendants' motion be granted in part and denied in part (Dkt. No. 51). Thereafter, Dr. Mace-Leibson filed objections to the R&R (Dkt. No. 55), RN Hall moved to clarify the record (Dkt. No. 56), and Givens filed an "Objection and Amendment to Report and Recommendation" (Dkt. No. 58).

## II. STANDARDS OF REVIEW

### A.   Pro Se Pleadings

The Court must liberally construe pro se pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir. 1978). A pro se complaint is subject to dismissal, however, if the Court cannot reasonably read the pleadings to state

7

**ORDER ADOPTING IN PART AND REJECTING IN PART**
**REPORT AND RECOMMENDATION [DKT. NO. 51] AND GRANTING**
**IN PART AND DENYING IN PART MOTION TO DISMISS [DKT. NO. 35]**

a valid claim on which the plaintiff could prevail. Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him, nor should it "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

**B.    Motion to Dismiss**

Fed. R. Civ. P. 12(b)(6) allows a defendant to move for dismissal on the grounds that a complaint does not "state a claim upon which relief can be granted." When reviewing a complaint, the Court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted).

A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). "[A] complaint must contain 'enough facts to state a

**ORDER ADOPTING IN PART AND REJECTING IN PART
REPORT AND RECOMMENDATION [DKT. NO. 51] AND GRANTING
IN PART AND DENYING IN PART MOTION TO DISMISS [DKT. NO. 35]**

claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 n.7 (quoting Twombly, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).

**C.    Report and Recommendation**

When reviewing a magistrate judge's R&R made pursuant to 28 U.S.C. § 636, the Court must review de novo only the portions of the R&R to which an objection is timely made. 28 U.S.C. § 636(b)(1)(C). Otherwise, "the Court may adopt, without explanation, any of the magistrate judge's recommendations to which the prisoner does not object." Dellacirprete v. Gutierrez, 479 F. Supp. 2d 600, 603-04 (N.D.W. Va. 2007) (citing Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983)). Courts will uphold those portions of a recommendation to which no objection has been made unless they are "clearly erroneous." See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).

ORDER ADOPTING IN PART AND REJECTING IN PART
REPORT AND RECOMMENDATION [DKT. NO. 51] AND GRANTING
IN PART AND DENYING IN PART MOTION TO DISMISS [DKT. NO. 35]

### III. DISCUSSION

The allegations in Givens's complaint and administrative grievances implicate conduct from 2009 through 2013. On careful review, it is clear that Givens's claims against Warden Williams, Dr. Mace-Leibson, and Director Eichenlaub are time-barred under the statute of limitations, and that NP Nolte is entitled to immunity as a Public Health Officer. Nonetheless, Givens's allegations against Dr. Anderson and RN Hall are not clearly time-barred, and state a plausible claim for deliberate indifference.

**A.     Statute of Limitations**

The defendants argue that Givens knew of his claim that the defendants had failed to screen him for TB upon his arrival at FCI Gilmer by at least October 2009 (Dkt. No. 36 at 10). In addition, they contend that "any claim alleging a delay in eye surgery which was ultimately performed in February 2012, expired under the statute of limitations in February 2014." Id. at 12 n.3. Givens argues that he could not have known of his claim until after he completed the grievance process, or, alternatively, that he was subjected to a "continuous violation" by the defendants (Dkt. No. 45 at 6-7).

**ORDER ADOPTING IN PART AND REJECTING IN PART
REPORT AND RECOMMENDATION [DKT. NO. 51] AND GRANTING
IN PART AND DENYING IN PART MOTION TO DISMISS [DKT. NO. 35]**

The Court looks to state law to determine the statute of limitations applicable in a <u>Bivens</u> action. <u>Reinbold v. Evers</u>, 187 F.3d 348, 359 n.10 (4th Cir. 1999). In West Virginia, actions for personal injury must be brought "within two years next after the right to bring the same shall have accrued." W. Va. Code § 55-2-12. "Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." <u>Nasim v. Warden, Md. House of Corr.</u>, 64 F.3d 951, 955 (4th Cir. 1995). In other words, "a federal cause of action accrues upon inquiry notice." <u>Id.</u>

"[A] motion to dismiss filed under Federal Rule of [Civil] Procedure 12(b)(6) . . . generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred," except "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." <u>Goodman v. Praxair, Inc.</u>, 494 F.3d 458, 464 (4th Cir. 2007). A motion to dismiss is thus the proper avenue for raising the statute of limitations only if "all facts necessary to the affirmative defense 'clearly appear[] <u>on the face of the</u>

**ORDER ADOPTING IN PART AND REJECTING IN PART
REPORT AND RECOMMENDATION [DKT. NO. 51] AND GRANTING
IN PART AND DENYING IN PART MOTION TO DISMISS [DKT. NO. 35]**

complaint.'" <u>Id.</u> (quoting <u>Richmond, Fredericksburg & Potomac R.R.</u>
<u>v. Forst</u>, 4 F.3d 244, 250 (4th Cir. 1993)).

Here, Givens filed suit on July 2, 2015 (Dkt. No. 1).
Therefore, unless equitable tolling applies, he can only assert
causes of action that accrued on or after July 2, 2013. <u>See</u> W. Va.
Code § 55-2-12. "[T]he question presented in this case is whether
the . . . complaint sets forth <u>on its face</u> the facts necessary to
conclude that [Givens's] claims are barred by the statute of
limitations." <u>Goodman</u>, 494 F.3d at 464. With the exception of his
allegations that Dr. Anderson and RN Hall prolonged treatment for
his eye condition, Givens's claims are clearly barred by the
statute of limitations.

**1. TB Screening and Exposure**

In his first and second claims, Givens alleges that Warden
Williams and Dr. Mace-Leibson violated his Eighth Amendment rights
when they failed to administer a PPD test upon his arrival at FCI
Gilmer in February 2009 (Dkt. No. 1 at 8-9). Givens later clarified
that this failure represents a generally insufficient TB screening
procedure at FCI Gilmer, which resulted in his exposure to TB and
ultimately led to his detached retina and permanent vision loss
(Dkt. No. 45 at 9-10). In his administrative grievance, Givens

**ORDER ADOPTING IN PART AND REJECTING IN PART
REPORT AND RECOMMENDATION [DKT. NO. 51] AND GRANTING
IN PART AND DENYING IN PART MOTION TO DISMISS [DKT. NO. 35]**

alleged that he learned in December 2009 that his PPD test in October had been positive for TB exposure, and consequently he was placed in isolation (Dkt. No. 36-1 at 20).

From these allegations, it is clear that, at least as of December 2009, Givens knew or should have known that (1) he had not been screened for TB when he arrived at FCI Gilmer in February 2009, and (2) he had tested positive for TB exposure in October 2009. Givens thus "knew of his [TB exposure] and who caused it" prior to 2010. See Nasim, 64 F.3d at 956. Although it was incumbent upon him to file suit on any causes of action related to TB screening and exposure prior to 2012, see W. Va. Code § 55-2-12, he delayed filing any action until July 2, 2015 (Dkt. No. 1).

Under the facts alleged, the two-year limitations period clearly ran before Givens filed any administrative grievances, thus eliminating any possibility that he is entitled to equitable tolling of these claims. Young, No. 2:10cv66, 2011 WL 3297493, at *4. Therefore, Givens's claims that Warden Williams and Dr. Mace-Leibson failed to screen him for TB in 2009 are barred by the statute of limitations.[4]

---

[4] Even if the claim against Warden Williams were considered timely, liability in a Bivens action must be based on personal involvement, rather than respondeat superior. See Trulock v. Freeh,

**ORDER ADOPTING IN PART AND REJECTING IN PART
REPORT AND RECOMMENDATION [DKT. NO. 51] AND GRANTING
IN PART AND DENYING IN PART MOTION TO DISMISS [DKT. NO. 35]**

In his brief, Givens argued that Dr. Mace-Leibson unnecessarily prescribed a multi-drug treatment regimen, including Rifampin, for his TB that caused his vision problems (Dkt. Nos. 36-1 at 20; 45 at 16-17, 19). Even if Givens had included this allegation in his complaint, it is plainly barred by the statute of limitations. Givens's grievances establish that, during his TB medication regimen, which began in December 2009 and ended on April 10, 2010, Givens expressed concerns to Dr. Anderson that the prescribed medication was affecting his vision (Dkt. No. 10-1 at 10). Thus, Givens knew or should have known of any claims related to Rifampin's effect on his vision no later than April 10, 2010.

Even assuming that Givens's retinal detachment was caused by Dr. Mace-Leibson's treatment decisions, it would be merely an

_____

275 F.3d 391, 402 (4th Cir. 2001). Givens has failed to allege any action or inaction by Warden Williams. Instead, he seeks to hold Warden Williams liable for failures that, as he broadly characterizes, are attributable to "medical care staff" (Dkt. No. 1 at 7-8). This is insufficient to state a claim for deliberate indifference against a supervisory official. See Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990), overruled on other grounds Farmer v. Brennan, 511 U.S. 828 (1994) ("[L]iability on the part of the supervisory defendants requires a showing that: (1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations.").

**ORDER ADOPTING IN PART AND REJECTING IN PART**
**REPORT AND RECOMMENDATION [DKT. NO. 51] AND GRANTING**
**IN PART AND DENYING IN PART MOTION TO DISMISS [DKT. NO. 35]**

ongoing ill-effect of the original violation about which Givens was already aware, and therefore would not toll the running of the statute of limitations. See A Society Without a Name v. Virginia, 655 F.3d 342, 348 (4th Cir. 2011) ("[C]ontinuing ill effects of an original violation . . . do not constitute a continuing violation."). Further, even if the statutory period for causes of action related to Givens's TB medication regimen did not begin until Givens stopped taking Rifampin on April 10, 2010, and remained equitably tolled during both of his administrative grievance proceedings – August 23, 2011, to May 31, 2012, and December 16, 2012, to June 19, 2014 – the time to file suit still expired in the Fall of 2014, almost one year before Givens filed his complaint.[5]

**2.   Prolonged Treatment**

In his third and fourth claims, Givens alleges that Dr. Anderson and RN Hall "prolonged his treatment for his eye condition," causing him to suffer a detached retina and permanent

---

[5] To the extent Givens seeks leave to amend his complaint with these and similar allegations against Dr. Mace-Leibson (Dkt. No. 58), any amendment would be futile since such claims are time-barred. Fed. R. Civ. P. 15(a)(2); Ward Elecs. Serv., Inc. v. First Commercial Bank, 819 F.2d 496, 497 (4th Cir. 1987) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

**ORDER ADOPTING IN PART AND REJECTING IN PART
REPORT AND RECOMMENDATION [DKT. NO. 51] AND GRANTING
IN PART AND DENYING IN PART MOTION TO DISMISS [DKT. NO. 35]**

vision loss (Dkt. No. 1 at 8-9). In his administrative grievances, Givens complained that he had been taken off the list to receive eye surgery despite the fact that he "needed the surgery right away" (Dkt. No. 36-1 at 10). Ultimately, Givens underwent a retinal attachment on his right eye on February 27, 2012, and an additional unspecified eye surgery on November 17, 2013. Id. at 16, 26.

The allegations against Dr. Anderson and RN Hall are not a "relatively rare circumstance" in which the complaint presents sufficient information to rule on the statute of limitations defense. Goodman, 494 F.3d at 464. When viewed liberally, Givens's complaint alleges "prolonged treatment" and delays in necessary surgery (Dkt. Nos. 1 at 8-9; 36-1 at 10). As the most recent eye surgery seems to have occurred on November 17, 2013 (Dkt. No. 36-1 at 26), this treatment falls within the statute of limitations. The Court thus cannot conclude at this early stage of the litigation that Givens's claim for "prolonged treatment" is time-barred.

### 3. Grievance Denials

In his fifth claim, Givens alleges that Director Eichenlaub violated his due process rights by denying his grievances despite having knowledge that his rights were being violated (Dkt. No. 1 at

**ORDER ADOPTING IN PART AND REJECTING IN PART
REPORT AND RECOMMENDATION [DKT. NO. 51] AND GRANTING
IN PART AND DENYING IN PART MOTION TO DISMISS [DKT. NO. 35]**

9). The final administrative response that Director Eichenlaub provided to Givens's grievances, however, is dated April 2, 2013 (Dkt. No. 36-1 at 23-24). Therefore, any cause of action Givens may have had against Director Eichenlaub accrued several months prior to July 2, 2013, and thus is barred by the statute of limitations.[6]

**B.    Public Health Officer Immunity**

The defendants argue that NP Nolte is entitled to absolute immunity as a Public Health Officer (Dkt. No. 36 at 24). Givens does not contest this argument.

Under 28 U.S.C. § 1915(e)(2)(B)(iii), the Court may, at any time, dismiss a case if it "determines that . . . the action . . . seeks monetary relief against a defendant who is immune from such relief." See Smith v. Shelby Cty., Tenn., 3 F. App'x 436, 438 (6th Cir. 2001) (unpublished decision). A plaintiff may not use a Bivens

---

[6] Notably, Givens's claim against Director Eichenlaub failed to allege an actionable constitutional violation. Accord Battle v. Ledford, No. 7:16cv20, 2017 WL 432822 (W.D. Va. Jan. 30, 2017) (quoting George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) ("[R]uling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation.")); Freeland v. Ballard, 6 F. Supp. 3d 683, 693 (S.D.W. Va. 2014) (compiling cases) ("Although the Fourth Circuit has not directly addressed the issue, courts in other federal circuits have held that liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance."); see also Paige v. Kupec, No. AW-02-3430, 2003 WL 23274357, at *1 (D. Md. Mar. 31, 2003).

**ORDER ADOPTING IN PART AND REJECTING IN PART**
**REPORT AND RECOMMENDATION [DKT. NO. 51] AND GRANTING**
**IN PART AND DENYING IN PART MOTION TO DISMISS [DKT. NO. 35]**

action if "defendants show that Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective." Carlson v. Green, 446 U.S. 14, 18-19 (1980). The sole remedy for injury inflicted by a Public Health Officer acting within the scope of his employment is against the United States under the Federal Tort Claims Act ("FTCA"). 42 U.S.C. § 233(a). In most cases, Public Health Officer immunity is "established by a declaration affirming that the defendant was a PHS official during the relevant time period." Hui v. Castaneda, 559 U.S. 799, 811 (2010).

Here, when Givens named NP Nolte as a defendant, he made no specific allegations against him (Dkt. No. 1 at 3). NP Nolte, nevertheless, submitted a declaration averring that he has been a commissioned officer in the Public Health Service since October 1, 2006 (Dkt. No. 36-5 at 2). As such, Givens's sole remedy for any injuries allegedly inflicted by NP Nolte during the relevant time would arise, if at all, under the FTCA. 42 U.S.C. § 233(a). NP Nolte therefore is entitled to immunity from damages in this Bivens action.

**ORDER ADOPTING IN PART AND REJECTING IN PART
REPORT AND RECOMMENDATION [DKT. NO. 51] AND GRANTING
IN PART AND DENYING IN PART MOTION TO DISMISS [DKT. NO. 35]**

## C.  Deliberate Indifference

In their motion to dismiss, the defendants argue that Givens merely disagrees with their medical judgments and has failed to state a claim for deliberate indifference (Dkt. No. 36 at 17-18). Givens, on the other hand, argues that he has stated such a claim because the defendants exposed him to TB, misdiagnosed him with TB, maintained him on medication that harmed him, and delayed surgery on his eyes (Dkt. No. 45 at 8-18). As previously discussed, Givens's claims regarding TB screening, exposure, and treatment are barred by the statute of limitations. At bottom, the question presented is whether Givens's remaining allegations, that Dr. Anderson and RN Hall "prolonged his treatment for his eye condition," state a claim for deliberate indifference under the Eighth Amendment.

The Eighth Amendment protects prisoners from cruel and unusual punishment, including "the unnecessary and wanton infliction of pain." Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotation omitted). For a prisoner to successfully allege that he received medical treatment so deficient that it resulted in an Eighth Amendment violation, he must establish both that he had a "serious medical need[]" and that the defendants exhibited

ORDER ADOPTING IN PART AND REJECTING IN PART
REPORT AND RECOMMENDATION [DKT. NO. 51] AND GRANTING
IN PART AND DENYING IN PART MOTION TO DISMISS [DKT. NO. 35]

"deliberate indifference" to it. Estelle, 429 U.S. at 104. The
Court concludes that, at this early juncture of the case, Givens
has alleged facts sufficient to satisfy both of these critical
elements.

### 1.    The Objective Prong

The first prong of the analysis is objective, Brice v. Va.
Beach Correctional Ctr., 58 F.3d 101, 104 (4th Cir. 1995), and
requires that the plaintiff demonstrate "a serious medical need
. . . diagnosed by a physician as mandating treatment or one that
is so obvious that even a lay person would easily recognize the
necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225,
241 (4th Cir. 2008).

Givens has satisfied this objective prong both with regard to
his unspecified "eye condition," as well as his detached retina.
First, he has alleged that a physician diagnosed an "eye condition"
requiring treatment; in 2010, a doctor purportedly told him that he
needed to undergo eye surgery right away (Dkt. No. 36-1 at 10).
Second, Givens's detached retina undoubtedly qualifies as a serious
medical need. See Horne v. Univ. of Tx. Med. Branch, 516 F. App'x
377 (5th Cir. 2013) (unpublished decision); Douglas v. Jin, No. 11-

**ORDER ADOPTING IN PART AND REJECTING IN PART**
**REPORT AND RECOMMENDATION [DKT. NO. 51] AND GRANTING**
**IN PART AND DENYING IN PART MOTION TO DISMISS [DKT. NO. 35]**

0350, 2014 WL 294889, at *1 (W.D. Pa. Jan. 27, 2014); <u>Browning v. Snead</u>, 886 F. Supp. 547, 552 (S.D.W. Va. 1995).

### 2.    The Subjective Prong

To establish the subjective prong, Givens must allege that, as to his medical need, the defendants, "subjectively aware of the need and its seriousness, nevertheless acted with 'deliberate indifference' to it by declining to secure available medical attention." <u>Brice</u>, 58 F.3d at 104. The standard "sets a particularly high bar to recovery." <u>Iko</u>, 535 F.3d at 241. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." <u>Estelle</u>, 429 U.S. at 106. A defendant must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).

This requires a showing that the defendant had "actual knowledge of the risk of harm" and that "his actions were insufficient to mitigate the harm to the inmate arising from his medical needs." <u>Iko</u>, 535 F.3d at 241 (internal quotation and emphasis omitted). "[A] significant delay in treatment of a serious

**ORDER ADOPTING IN PART AND REJECTING IN PART
REPORT AND RECOMMENDATION [DKT. NO. 51] AND GRANTING
IN PART AND DENYING IN PART MOTION TO DISMISS [DKT. NO. 35]**

medical condition" can violate the Eighth Amendment if it "results in some substantial harm to the patient." Webb v. Hamidullah, 281 F. App'x 159, 166-67 (4th Cir. 2008) (unpublished decision) (citing Estelle, 429 U.S. at 104-05).

Here, Givens's complaint makes the bare allegation that Dr. Anderson and RN Hall failed to provide medical care by prolonging treatment for his "eye condition" (Dkt. No. 1 at 8-9). In his administrative grievances, however, Givens provided further information, alleging that, although a doctor had informed him that he needed to undergo eye surgery "right away," and that the BOP had approved the surgery, he was removed from the "high priority list" for surgery (Dkt. No. 36-1 at 10).

Taken in isolation, Givens's complaint arguably consists of a mere "formulaic recitation of the elements of a cause of action," and fails to allege the subjective intent required to state a claim of deliberate indifference. Twombly, 550 U.S. at 555. However, when liberally construed and considered together with the administrative grievances that are integral to his complaint, a reasonable person could infer that the defendants were "on notice as to [Givens's] medical need but delayed treatment." Johnson v. Fields, 616 F. App'x 599, 601 (4th Cir. 2015) (unpublished decision); Brown v.

### ORDER ADOPTING IN PART AND REJECTING IN PART
### REPORT AND RECOMMENDATION [DKT. NO. 51] AND GRANTING
### IN PART AND DENYING IN PART MOTION TO DISMISS [DKT. NO. 35]

N.C. Dep't of Corrections, 612 F.3d 720, 723 (4th Cir. 2010); see also Goodman v. Wexford Health Sources, Inc., 435 F. App'x 202, 204 (4th Cir. 2011) (unpublished decision).

In his administrative grievances, Givens complained of a delay in necessary treatment for his serious medical needs, and his complaint identifies Dr. Anderson and RN Hall as the parties responsible for that delay. Thus, viewed liberally, Givens's pro se complaint sufficiently alleges a prima facie case of deliberate indifference. See Johnson, 616 F. App'x at 601 (quoting White by White v. Chambliss, 112 F.3d 731, 737 (4th Cir. 1997)) ("A claim of deliberate indifference . . . implies at a minimum that defendants were placed on notice of a danger and chose to ignore the danger notwithstanding the notice."); Harden v. Green, 27 F. App'x 173, 178 (4th Cir. 2001) (unpublished decision) ("Deliberate indifference requires, at minimum, that the defendant thought about the matter and chose to ignore it.").

## IV. CONCLUSION

Givens's complaint sufficiently alleges a prima facie claim for deliberate indifference against Dr. Anderson and RN Hall regarding the treatment of his "eye condition" and an alleged delay of necessary surgery resulting in loss of vision. Without further

**ORDER ADOPTING IN PART AND REJECTING IN PART
REPORT AND RECOMMENDATION [DKT. NO. 51] AND GRANTING
IN PART AND DENYING IN PART MOTION TO DISMISS [DKT. NO. 35]**

medical records, however, the Court cannot address whether these claims may be time-barred, or whether Givens can prove more than a mere disagreement with his health care providers about his treatment regimen. See Jackson v. Lightsey, 775 F.3d 170, 174 (4th Cir. 2014). Therefore, following de novo review, for the reasons discussed, the Court:

1.  **ADOPTS in part** and **REJECTS in part** the R&R (Dkt. No. 51);

2.  **SUSTAINS** Dr. Mace-Leibson's objection regarding the statute of limitations (Dkt. No. 55);

3.  **GRANTS** RN Hall's motion to clarify the record (Dkt. No. 56);

4.  **GRANTS in part** and **DENIES in part** the defendants' motion to dismiss (Dkt. No. 35);

5.  **DISMISSES WITH PREJUDICE** the claims against defendants Warden Williams, Dr. Mace-Leibson, NP Nolte, and Director Eichenlaub, including those regarding TB screening, exposure, and treatment, and the denial of Givens's administrative remedies;

6.  **GRANTS** Givens's motion to amend his complaint by adding Dr. Anderson as a defendant, and **DIRECTS** him to file an

**ORDER ADOPTING IN PART AND REJECTING IN PART
REPORT AND RECOMMENDATION [DKT. NO. 51] AND GRANTING
IN PART AND DENYING IN PART MOTION TO DISMISS [DKT. NO. 35]**

amended complaint regarding Dr. Anderson and RN Hall by

**Monday, May 15, 2017** (Dkt. No. 58); and

7. **RECOMMITS** this case to Magistrate Judge Aloi, who is authorized to consider the record and enter rulings or recommendations as appropriate, including the entry of a scheduling order on discovery and dispositive motions if the remaining defendants file an answer in response to the amended complaint. 28 U.S.C. § 636.

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record and the <u>pro se</u> petitioner, by certified mail, return receipt requested.

DATED: March 29, 2017.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE